Slip Op. 11-111

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| **ATAR S.R.L.**,<br><br>              Plaintiff,<br><br>       v.<br><br>**UNITED STATES**,<br><br>              Defendant,<br><br>       and<br><br>**AMERICAN ITALIAN PASTA COMPANY,<br>DAKOTA GROWERS PASTA COMPANY,<br>and NEW WORLD PASTA COMPANY**,<br><br>              Defendant-Intervenors. | **Before: Timothy C. Stanceu, Judge**<br><br>**Court No. 07-00086** |

### OPINION AND ORDER

[Rejecting a redetermination submitted by the U.S. Department of Commerce in litigation contesting the final results of an administrative review of an antidumping duty order on certain pasta from Italy]

Dated: September 7, 2011

*Riggle & Craven* (*David A. Riggle*, *David J. Craven* and *Shitao Zhu*) for plaintiff.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Reginald T. Blades, Jr.*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Jane C. Dempsey*, *Carrie A. Dunsmore*, *Richard P. Schroeder* and *David S. Silverbrand*); *Deborah R. King*, Office of Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Kelley Drye & Warren LLP* (*David C. Smith*) for defendant-intervenors.

Stanceu, Judge: Plaintiff Atar S.r.l. ("Atar"), an Italian pasta producer, brought this action

to contest the final determination ("Final Results") of the International Trade Administration,

United States Department of Commerce ("Commerce" or the "Department") concluding the

ninth administrative review of an antidumping duty order on certain pasta from Italy (the

"subject merchandise").[1]  *See Notice of Final Results of the Ninth Admin. Review of the*

*Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007).  The

ninth administrative review covered entries of subject merchandise made during the period of

July 1, 2004 through June 30, 2005 (the "period of review" or "POR").  *Id.*

     In its first decision in this case, the court sustained Atar's challenge in part, remanding

the Final Results for reconsideration, and redetermination as necessary, of the indirect selling

expense ("ISE") and profit components Commerce calculated when determining the constructed

value ("CV") of Atar's subject merchandise.  *Atar, S.r.l. v. United States*, 33 CIT __, __, 637 F.

Supp. 2d 1068, 1092-93 (2009) ("*Atar I*").  The court ordered a remand because the

Department's decision to use only data from home-market sales made in the ordinary course of

trade (specifically, above-cost sales) by the six respondents in the previous (eighth) review in

performing the profit and ISE calculations was not grounded in findings of fact, supported by

substantial record evidence, that were pertinent to Atar's specific situation.  *Id.* at __, 637 F.

Supp. 2d at 1088.

---

[1] The scope of the antidumping duty order is defined as
[S]hipments of certain non-egg dry pasta in packages of five pounds four ounces or
less, whether or not enriched or fortified or containing milk or other optional
ingredients such as chopped vegetables, vegetable purees, milk, gluten, diastasis,
vitamins, coloring and flavorings, and up to two percent egg white. The pasta
covered by this scope is typically sold in the retail market, in fiberboard or cardboard
cartons, or polyethylene or polypropylene bags of varying dimensions.
*Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order on Certain
Pasta from Italy*, 72 Fed. Reg. 7,011, 7,012 (Feb. 14, 2007).

In its second decision in this case, the court found unlawful the redetermination

Commerce submitted in response to *Atar I* (the "First Remand Redetermination") because

Commerce did not determine a "profit cap" when determining its CV profit amount and gave no

indication that it had attempted to comply with the profit cap provision in the statute.  *Atar, S.r.l.*

*v. United States*, 34 CIT __, __, 703 F. Supp. 2d 1359, 1364 (2010) ("*Atar II*"); *see Results of*

*Remand Determination Pursuant to Ct. Remand Order* (Sept. 3, 2009) ("*First Remand*

*Redetermination*").  In the First Remand Redetermination, Commerce calculated CV profit and

ISE using the data of the home-market sales of only two of the six respondents in the previous

(eighth) review of the order, including data on sales made outside the ordinary course of trade.

*Atar II*, 34 CIT at __, 703 F. Supp. 2d at 1362.  Commerce chose those two respondents because

they were the only respondents that realized an overall profit on sales of pasta in the home

market of Italy for the period of the eighth review.  *Id.* at __, 703 F. Supp. 2d at 1362.  The CV

profit and ISE as recalculated in the First Remand Redetermination lowered Atar's margin from

the 18.18% determined in the Final Results to 14.45%.  *Id.* at __, 703 F. Supp. 2d at 1361-62.

Before the court is the redetermination ("Second Remand Redetermination") Commerce

issued in response to *Atar II*, in which Commerce made no change to its CV profit and ISE

determinations but concluded that its method of calculating CV profit, which it considered to

satisfy the "reasonable method" requirement of the relevant statutory provision, also satisfied the

profit cap requirement.  *Results of Redetermination Pursuant to Ct. Remand Order* (Jul. 19,

2010) ("*Second Remand Redetermination*").  Also before the court is defendant's motion to

vacate the court's orders in *Atar I* and *Atar II* based on the decision of the United States Court of

Appeals for the Federal Circuit ("Court of Appeals") in *Thai I-Mei Frozen Foods Co. v. United*

*States*, 616 F.3d 1300 (Fed. Cir. 2010).  Def.'s Consol. Mot. for Relief from this Ct.'s Remand

Orders & Reply to Pl.'s Cmts. upon the Second Remand Redetermination 1-8 ("Def.'s Consol.

Mot.").  That decision, according to defendant, "directly supports" the determinations of CV ISE

and profit the court previously held unlawful.  *Id.* at 1-2.

 The court concludes that the Second Remand Redetermination does not satisfy the profit

cap provision in the statute, which requires Commerce to set the profit cap at the "amount [of

profit] normally realized" by home-market exporters/producers in sales "of merchandise that is

in the same general category of products as the subject merchandise."  Tariff Act of 1930

("Tariff Act"), § 773, 19 U.S.C. § 1677b(e)(2)(B)(iii) (2006).  The court also concludes that the

holding in *Thai I-Mei* does not require the court to vacate its previous orders.  However, the

remand the court is ordering does not preclude Commerce from redetermining CV profit by a

method that relies only on above-cost sales, provided Commerce subjects its result to a lawful

profit cap.

## I. BACKGROUND

 The background of this litigation is discussed in the court's opinions in *Atar I*, 33 CIT

at __, 637 F. Supp. 2d at 1072-73, and *Atar II*, 34 CIT at __, 703 F. Supp. 2d at 1361-62.

Additional background is presented below as a summary and to address events that have

occurred since *Atar II* was decided.

 On June 9, 2010, Commerce requested comments on a draft version of the Second

Remand Redetermination from Atar and defendant-intervenors American Italian Pasta Company,

Dakota Growers Pasta Company, and New World Pasta Company.  *Letter from Program

Manager, AD/CVD Operations to Atar* (June 9, 2010) (Admin. R. Doc. No. 6543); *Letter from*

*Program Manager, AD/CVD Operations to Defendant-Intervenors* (June 9, 2010) (Admin. R.

Doc. No. 6544).  Atar filed comments on the draft results on June 17, 2010.  *Letter from Atar to*

*the Sec'y of Commerce* (June 17, 2010) (Admin. R. Doc. No. 6530).  The Second Remand

Redetermination is essentially identical to the draft version, with the addition of a section

addressing comments submitted by Atar.  *Draft Results of Redetermination* (June 9, 2010)

(Admin. R. Doc. No. 6542).

On July 19, 2010, Commerce filed the Second Remand Redetermination, which assigned

Atar the same weighted-average dumping margin, 14.45%, as did the First Remand

Redetermination.  *Second Remand Redetermination* 12; *First Remand Redetermination* 15.  On

August 18, 2010, Atar filed comments in opposition to the Second Remand Redetermination.

Cmts. on Remand Determination.

On August 12, 2010, the Court of Appeals issued its opinion in *Thai I-Mei*, which

overturned a decision of the United States Court of International Trade ("Court of International

Trade") and upheld the Department's determination of CV profit by a method that excluded non-

ordinary-course sales made in a third-country comparison market.  *Thai-I-Mei*, 616 F.3d

at 1308-09.  On September 27, 2010, defendant filed a consolidated motion requesting relief

from the court's orders in *Atar I* and *Atar II* pursuant to USCIT Rule 60(b) or in the alternative

that the court affirm the Second Remand Redetermination.  Def.'s Consol. Mot.  Plaintiff

opposes defendant's motion.  Resp. to Def.'s Consol. Mot. for Relief from this Ct.'s Remand

Orders & Reply to Pl.'s Cmts. upon the Second Remand Redetermination.  Defendant-

intervenors responded neither to the Second Remand Redetermination nor to defendant's motion

for relief.

## II. DISCUSSION

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c) (2006), which pertains to actions commenced under section 516A of the Tariff Act, 19 U.S.C. § 1516a, including those contesting the final results of an administrative review issued under section 751 of the Tariff Act, 19 U.S.C. § 1675(a).  The court will sustain the Department's determination upon remand if it complies with the court's remand order, is supported by substantial evidence on the record, and is otherwise in accordance with law.  *See* Tariff Act, § 516A, 19 U.S.C. § 1516a(b)(1)(B)(i).

Rejecting certain of plaintiff's claims, the court in *Atar I* upheld the Department's determination that Atar, which made no home-market sales during the POR, did not have a viable third-country comparison market.  *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1074-81. *Atar I* did not uphold the Department's determinations of constructed value profit and ISE, which the Final Results calculated using profit and ISE data obtained from home-market sales made by the six Italian pasta producers (not including Atar) that were respondents in the previous (eighth) administrative review of the order.  *Id.* at __, 637 F. Supp. 2d at 1081-82.  In the Final Results, Commerce included in the constructed value ISE and profit calculations only the data on the six producers' home-market sales that Commerce determined to be "above cost" and therefore in the ordinary course of trade.[2]  *Id.* at __, 637 F. Supp. 2d at 1085.  *Atar I* held that

---

[2]  The statute defines "ordinary course of trade" as follows:

The conditions and practices which, for a reasonable time prior to the exportation of the subject merchandise, have been normal in the trade under consideration with respect to merchandise of the same class or kind. The administering authority shall consider the following sales and transactions, among others, to be outside the ordinary course of trade:

(continued...)

Commerce did not explain adequately how constructed value ISE and profit were determined by

a "reasonable method" as required by the third clause of subsection (e)(2)(B) of section 773 of

the Tariff Act, 19 U.S.C. § 1677b(e)(2)(B)(iii) ("clause (iii)").  *Id.* at __, 637 F. Supp. 2d

at 1088.  The court concluded that Commerce did not ground its decision to base constructed

value ISE and profit only on above-cost sales in findings of fact, supported by substantial record

evidence, that were pertinent to Atar's situation.  *Id.*

        In the First Remand Redetermination, Commerce determined constructed value profit

using the data from the home-market sales (both within and outside of the ordinary course of

trade) of the two of the six eighth-review respondents that realized an overall profit on sales

subject to the eighth review, citing a practice of considering unprofitable companies unsuitable

for determining constructed value profit.  *First Remand Redetermination* 6-7.  Commerce also

used the data of those two companies to determine constructed value ISE, reasoning that a

company's profit is a function of its indirect selling expenses.  *Id.* at 10.  In *Atar II*, the court

concluded that Commerce acted contrary to law by failing to adhere to the profit cap requirement

-----

[2](...continued)
        (A) Sales disregarded under section 1677b(b)(1) of this title.
Tariff Act of 1930, § 771, 19 U.S.C. § 1677(15) (2006).  Section 1677b(b)(1) provides:
        If the administering authority determines that sales made at less than the cost of
        production--
                (A) have been made within an extended period of time in substantial
                quantities, and
                (B) were not at prices which permit recovery of all costs within a reasonable
                period of time,
        such sales may be disregarded in the determination of normal value.
*Id.* § 1677b(b)(1).  Below cost sales were made in "substantial quantities" if "the weighted
average per unit price of the sales under consideration for the determination of normal value is
less than the weighted average per unit cost of production for such sales."  *Id.*
§ 1677b(b)(2)(C)(ii).

contained within clause (iii) when determining an amount for constructed value profit.  *Atar II*,

34 CIT at __, 703 F. Supp. 2d at 1370.  The court ordered a second remand, directing Commerce

to reconsider its determination of constructed value profit and recalculate this amount in a way

that satisfies both the profit cap and reasonable method requirements of the statutory provision.

*Id*. at __, 703 F. Supp. 2d 1370.  The remand order permitted Commerce "to redetermine the

constructed value indirect selling expense at that time."  *Id.* at __, 703 F. Supp. 2d at 1370.

 In the Second Remand Redetermination, Commerce made no change in its

determinations of constructed value profit and ISE for Atar, again using the data from the home-

market sales of the two eighth-review respondents that realized an overall profit.  *Second*

*Remand Redetermination* 2.  As the Second Remand Redetermination acknowledges, the First

Remand Redetermination did not include a profit cap calculation.  *Id.* at 2 n.2 ("[T]he

Department only addressed the profit cap calculation in the *Preliminary Results* of this

proceeding.").  In response to the court's remand order in *Atar II*, Commerce determined a profit

cap, stating in the Second Remand Redetermination that "the weighted-average profit rate of the

two respondents that earned a profit in the *Eighth Administrative Review*, after including sales

made both within and outside the ordinary course of trade, establishes a reasonable profit cap."

*Id.* at 7.

 A.  The Department's Profit Cap Determination Cannot Be Sustained on Remand

 Read in pertinent part and in context with clauses (i) and (ii), clause (iii) of 19 U.S.C.

§ 1677b(e)(2)(B) allows Commerce to determine the amount realized for profits based on any

"other" reasonable method, i.e., any method other than the methods prescribed by clauses (i)

and (ii), and expressly limits the Department's determination of CV profit, as follows:

the amount allowed for profits may not exceed the amount normally realized by exporters or producers (other than the exporter or producer described in clause (i) [the specific exporter or producer being examined]) in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise . . . .

19 U.S.C. § 1677b(e)(2)(B)(iii).[3]  As recognized by the Statement of Administrative Action

("SAA") accompanying passage of the Uruguay Round Agreements Act, which contained the

provision in question, the express limitation is identified as the "profit cap."  *Uruguay Round*

*Agreements Act, Statement of Administrative Action*, H.R. Doc. No. 103-316, Vol. 1, at 840

(1994), *reprinted in* 1994 U.S.C.C.A.N. 4040, 4176 ("*SAA*").

        The data of record from which a profit cap could be calculated, i.e., home-market profit

data, consist of data from the home-market pasta sales of Corticella, which was the only

respondent other than Atar in the ninth review, and data from the home-market pasta sales of the

six respondents in the eighth review.  From these data, Commerce chose profit data for the

home-market sales of only two of the six eighth-review respondents.  *Second Remand*

*Redetermination* 6.  Commerce decided against using the home-market profit data of the other

---

        [3] Clauses (i) and (ii) of 19 U.S.C. § 1677b(e)(2)(B) provide two methods of determining constructed value amounts:

        (i) the actual amounts incurred and realized by the specific exporter or producer being examined in the investigation or review for selling, general, and administrative expenses, and for profits, in connection with the production and sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise,

        (ii) the weighted average of the actual amounts incurred and realized by exporters or producers that are subject to the investigation or review (other than the exporter or producer described in clause (i)) for selling, general, and administrative expenses, and for profits, in connection with the production and sale of a foreign like product, in the ordinary course of trade, for consumption in the foreign country . . . .

four eighth-review respondents because those respondents did not realize an overall profit from

their home-market sales in that review.  *Id.*

The language of the Second Remand Redetermination, although not entirely clear,

appears to base the Department's profit cap decision on a statutory construction of clause (iii)

that required Commerce to consider only the sales data of the profitable home-market exporters

and producers.  Commerce reasoned that "the general usage of the term 'profit' explicitly refers

to a positive figure," *id.* at 10 (citing Barron's Financial Guides: Dictionary of Finance and

Investment Terms (New York 1987)), and cited the SAA for the proposition that "if a company

has no home market profit or has incurred losses in the home market, the Department is not

instructed to ignore the profit element, include a zero profit, or even consider the inclusion of the

loss; rather, the Department is directed to find an alternative home market profit," *id.* (citing *SAA*

at 840, *reprinted in* 1994 U.S.C.C.A.N. at 4176).  Commerce concluded that "a reasonable

interpretation of the statute indicates that a positive amount for profit must be included in CV"

and that "it reasonably follows that a 'profit cap' should include only positive amounts because

Commerce reasonably interprets 'profit' to be a positive amount and in its profit cap calculation

the Department is determining the 'profit' normally realized by other producers."  *Id.* at 10-11.

Rejecting Atar's argument that basing the profit cap on the sales of all six of the eighth-review

respondents still would have produced a positive profit rate, Commerce further stated, without

explanation, that "[t]he reasonableness of Commerce's interpretation of 'profit' and use of data

from only profitable companies in its profit cap calculation is not negated by the fact that

including data from companies that did not earn a profit could or does result in a positive profit

figure."  *Id.* at 11.  Commerce claimed it is owed deference for its statutory construction.  *Id.*

at 10 ("In circumstances in which Congress has expressly delegated authority to the Department

to interpret a provision in the statute, as is the case here, this court should accord such an

interpretation a great deal of deference.") (citing *Pesquera Mares Australes Ltda. v. United

States*, 266 F.3d 1372, 1380 (Fed. Cir. 2001)).

   Elsewhere in the Second Remand Redetermination, Commerce appears to rely on

grounds other than its statutory construction for its decision to determine a profit cap based on

the data of only the two eighth-review respondents that realized an overall profit on home-

market sales subject to the eighth review.  Commerce stated as follows:

> Because we require that CV profit be a positive amount, where the Court is requiring
> the Department to include sales that are made both within and outside the ordinary
> course of trade in its CV profit calculations, it is reasonable to determine that rates
> from only profitable companies here should constitute the "amount [of profit]
> normally realized by exporters or producers . . . in connection with the sale, for
> consumption in the foreign country, of merchandise that is in the same general
> category of products as the subject merchandise."

*Second Remand Redetermination* 6-7 (quoting 19 U.S.C. § 1677b(e)(2)(B)(iii)) (alterations in

original).  Thus, the Second Remand Redetermination appears to offer two justifications to

support its decision to exclude the data of the four nonprofitable respondents: a justification

based on a construction of the word "profit," as used in clause (iii), under which the Department

must base a profit cap on "positive amounts," and a justification based on the Department's

conclusion that, on this record, it is reasonable to base the profit cap on the sales of the two

profitable eighth-review respondents.  The former justification necessarily involves a question of

law; the latter, a question of whether substantial record evidence supported the profit cap the

Department determined on remand in this case.  The court considers both justifications.

The court reviews the Department's statutory construction of clause (iii) according to the principles of *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842-44 (1984).  In so doing, the court first considers "whether Congress has directly spoken to the precise question at issue," *id.* at 842; if so, the court "must give effect to the unambiguously expressed intent of Congress," *id.* at 843.  If not, and "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute."  *Id.*

The statute does not speak directly to the question of how Commerce is to determine the "profit cap," i.e., "the amount [of profit] normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise."  19 U.S.C. § 1677b(e)(2)(B)(iii). It does not direct that this amount be based on data from administrative reviews–current or previous–nor does it direct that data on unprofitable sales be included or excluded.  *Cf. Thai I-Mei*, 616 F.3d at 1306-07.  Because the statute is silent on these points, the court considers the Department's apparent construction of clause (iii) according to the second step of the analysis prescribed by *Chevron*.  Thus, the court considers whether Commerce reasonably interpreted the clause (iii) reference to "profit" such that Commerce was required to consider only the sales data of the profitable home-market exporters and producers.

The Department's construction of the statute is not reasonable.  Only a strained reading of the broad language of clause (iii), which contains references to "the amount[] . . . realized for . . . profits," "the amount allowed for profit," and "the amount normally realized by exporters and producers," could require Commerce to limit its profit cap calculation to the data of those

producers or exporters who realized a home-market profit over a significant time period (such as

the one-year period of the eighth review).  Any such construction, even if considered plausible,

would confine the Department's discretion drastically.  Had Congress intended to limit the

Department's discretion in so specific a way, it would have expressed that intent in the language

of clause (iii).  Further, the SAA does not support the Department's reading, stating that

Commerce should choose the data for the profit cap "on a case-by-case basis" and that

Commerce will not request from respondents data on which to analyze whether sales in the same

general category as the subject merchandise, which form the statutory basis of the profit cap, are

above-cost or below-cost sales.  *SAA* at 841, *reprinted in* 1994 U.S.C.C.A.N. at 4176-77.  The

SAA goes on to instruct that "[l]ikewise, the Administration does not intend that Commerce

would engage in an analysis of whether sales in the same general category are above-cost or

otherwise in the ordinary course of trade."  *Id.* at 841, *reprinted in* 1994 U.S.C.C.A.N. at 4177.

Commerce, therefore, erred to whatever extent it based its exclusion of the data of the four non-

profitable eighth-review respondents on a statutory construction under which it lacked the

discretion to do otherwise.

   The court next considers whether the Department's profit cap was permissible on the

factual record of this case and concludes to the contrary.  Substantial evidence does not support

the Department's determination that the profit cap amount reflected the "amount normally

realized by exporters or producers . . . in connection with the sale, for consumption in the foreign

country, of merchandise that is in the same general category of products as the subject

merchandise . . . ."  19 U.S.C. § 1677b(e)(2)(B)(iii).

As explained above, record data pertaining to the home-market profit experience

consisted principally of data from the home-market pasta sales of the six respondents in the

eighth review.  Rather than calculate a profit cap based on all such data, Commerce determined a

profit cap according to a weighted average of the profit rates of two of the six eighth-review

respondents.[4]  *Second Remand Redetermination* 6-7; *Mem. from Int'l Trade Compliance Analyst*

*to the File* attachment 1 (Aug. 20, 2009) (Admin. R. Doc. No. 6309) ("*First Remand Analysis*

*Mem.*").  This calculation method ignored home-market sales data that were material and

probative of the general conditions in the home market of Italy affecting the profitability of

domestic pasta producers operating there.  Although this record data cannot fairly be seen as

insignificant, by excluding it Commerce left itself with the data of only two eighth-review

respondents for use in its profit cap determination.[5]  One of those respondents was atypical in

that it earned a substantial profit and accounted for practically all of the quantities in the home-

market database obtained from that review.  *First Remand Analysis Mem.* attachment 1.  The

data from the other eighth-review respondent represented a much lower quantity and a profit rate

---

[4] Also on record were ninth-review data from the home-market pasta sales of Corticella, the only exporter or producer other than plaintiff Atar S.r.l. in the ninth review.  The court does not reach the question of whether the International Trade Administration, United States Department of Commerce ("Commerce") erred in excluding from its calculation the Corticella data from the ninth review.  Corticella was also a respondent in the eighth review.  *Mem. from Int'l Trade Compliance Analyst to the File* attachment 1 (Aug. 20, 2009) (Admin. R. Doc. No. 6309).

[5] The court does not hold or imply that Commerce may never set aside home-market sales data in determining a profit cap.  In some cases, Commerce might be able to justify excluding from the profit cap calculation data it found to be aberrational and thus not reflective of the amount of profit "normally realized."  Commerce made no finding that any data it excluded were aberrational.  Moreover, the record reveals that unprofitable home-market sales were so common that four of the six eighth-review respondents failed to earn an overall profit on home-market sales subject to the eighth review.

that was only a fraction of that realized by the larger respondent.[6]  The calculated profit cap thus

reflects, to a large extent, the profit experience of only one Italian exporter/producer and ignores

entirely the eighth-review data of four home-market exporter/producers.  Substantial record

evidence, therefore, does not support the Department's determination that the profit cap in the

Second Remand Redetermination is the "amount normally realized" by exporters and producers

in Italy on sales for consumption in Italy of merchandise in the same general category of

products as the subject merchandise.

        Because substantial evidence does not support the profit cap determination, the court

need not decide whether Commerce was correct in concluding that it was reasonable to ignore

the sales of the other four respondents because "CV profit should be a positive amount."  *Second

Remand Redetermination* 6.  The court observes, however, that the Department's conclusion that

CV profit should be a positive amount is inconsistent with the holding of the Court of

International Trade in *Floral Trade Council v. United States*, under which the profit cap was

determined to be zero in a case in which the home-market producers of merchandise in the same

general category of products as the subject merchandise did not realize a profit.  23 CIT 20, 30,

41 F. Supp. 2d 319, 329 (1999).  Moreover, as the Court of International Trade has recognized,

"the goal in calculating CV profit is to approximate the home market profit experience."  *Geum

Poong Corp. v. United States*, 26 CIT 322, 327, 193 F. Supp. 2d 1363, 1370 (2002).  Here,

Commerce determined a profit cap using an incomplete set of data that could not reflect the

actual conditions affecting profitability in the home market.

---

        [6] Because Commerce used a weighted average rather than a simple average, the inclusion
of home-market sales data from the smaller of the two eighth-review respondents had relatively
little effect on the profit cap determination.

In conclusion, the Department's profit cap determination is unlawful to the extent that it was based on an impermissible construction of clause (iii), and it is also unlawful because it is not supported by substantial evidence on the record considered as a whole.  On remand, Commerce must redetermine the profit cap according to a lawful method.

B.  The Court Will Not Sustain the Final Results in Response to the Holding in *Thai I-Mei*

Defendant moves under USCIT Rule 60(b) for the court to vacate the orders in *Atar I* and *Atar II* and sustain the Final Results based on the intervening legal decision in *Thai I-Mei*, 616 F.3d 1300.[7]  Def.'s Consol. Mot. 1-2.  In its motion, defendant characterizes *Thai I-Mei* as "holding that, under 19 U.S.C. § 1677b(e)(2)(B)(iii), Commerce may exclude sales outside the ordinary course of trade in calculating constructed value profit rate." *Id.* at 1.  According to defendant, "[t]he appellate court held that Commerce's statement of a general preference for exclusion of sales outside the ordinary course of trade when the data were for like products sold by other respondents, was reasonable." *Id.* at 5.  Defendant argues that "[a]s it had done in *Thai I-Mei*, Commerce, in the final results in this case, limited the data it used to calculate Atar's constructed value profit to sales of pasta made within the ordinary course of trade" and that "*Thai I-Mei* establishes that this methodology is reasonable, and the Court should, therefore, vacate its First Remand Order." *Id.* at 6.

---

[7] Defendant moved for reconsideration pursuant to USCIT Rule 60(b), which does not apply in the circumstances of this case because the remand orders in *Atar, S.r.l. v. United States*, 33 CIT __, __, 637 F. Supp. 2d 1068, 1092-93 (2009) and *Atar, S.r.l. v. United States*, 34 CIT __, __, 703 F. Supp. 2d 1359, 1364 (2010) were not final orders.  As the advisory notes to the Federal Rules of Civil Procedure make clear, the analogous Fed. R. Civ. P. 60(b) applies only to final decisions.  Fed. R. Civ. P. 60(b), advisory notes ("[I]nterlocutory judgments are not brought within the restrictions of the rule [i.e., 60(b)]").  The court, therefore, considers defendant's motion under its equitable power to modify its prior orders.

In *Thai I-Mei*, the Court of Appeals upheld the Department's determining the CV profit of plaintiff Thai I-Mei Frozen Foods Co., Ltd., a frozen shrimp producer in Thailand, based on data from sales of the foreign like product (i.e., frozen shrimp) that the other two mandatory respondents in the review had made in Canada, which Commerce used as the third-country comparison market for the sales of subject merchandise by those two respondents. *Thai I-Mei*, 616 F.3d at 1302. Commerce excluded from its CV profit determination data on the Canadian sales that were made outside the ordinary course of trade. *Id.* at 1302. The Court of Appeals concluded that Commerce reasonably interpreted the antidumping statute and permissibly excluded the non-ordinary-course sales in the circumstances of that case. *Id.* at 1309. The Court of Appeals accepted the Department's rationale that available data allowed Commerce to exclude those sales and that doing so achieved consistency with respect to the other two respondents, for which Commerce excluded non-ordinary-course sales in determining normal value based on the Canadian sales. *Id.* As the Court of Appeals stated, "Commerce's statement of a general preference for exclusion of sales outside the ordinary course of trade where, as here, the data are for like products sold by other respondents, is reasonable." *Id.*

This case presents a different factual circumstance than did *Thai I-Mei*. In *Atar I*, the court reviewed the Department's determination, as described in an issues and decision memorandum, to calculate Atar's constructed value profit and indirect selling expenses based on data from the previous administrative review of the antidumping duty order on pasta from Italy. *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1085-89; Issues & Decision Mem., A-475-818, ARP 6-05, at 21 (Feb. 14, 2007) (Admin. R. Doc. No. 5615). In this case, the availability of data is a factor as it was in *Thai I-Mei*, but Commerce did not exclude data on non-ordinary-course sales

to achieve consistency with other respondents in the ninth review.  Nor did Commerce ground its

determination to exclude non-ordinary-course sales on specific circumstances other than the

availability of data, as Commerce indicated it would do in the preamble to the antidumping

regulations.  *Atar I*, 33 CIT at __, 637 F. Supp. 2d at 1085; *see Antidumping Duties;*

*Countervailing Duties*, 62 Fed. Reg. 27,296, 27,358-59 (May 19, 1997) ("[D]epending on the

*circumstances and* the availability of data, there may be instances in which the Department

would consider it necessary to exclude certain home market sales that are outside the ordinary

course of trade . . . .") (emphasis added).  Due to the differences in the two cases, the court does

not agree with defendant that the holding in *Thai I-Mei* requires affirmance of the Final Results

in this proceeding.

Also, this case, unlike *Thai I-Mei*, presents the issue of compliance with the profit cap

requirement of clause (iii).[8]  Although the court discussed the profit cap requirement in its

opinion in *Atar I*, the court's holding in *Atar I* that the Department had failed to justify its CV

profit determination under the "reasonable method" requirement of clause (iii) made it

unnecessary at that time for the court to decide specifically whether the Department's profit

calculation complied with profit cap requirement in that provision.  *See Atar I*, 33 CIT at __, 637

F. Supp. 2d at 1089.  For purposes of explaining its remand order, the court reaches that question

now.

In the Final Results, "Commerce used the same data set, and the same methodology, to

calculate the profit cap that it used to calculate Atar's constructed value profit."  *Id.* at __, 637

---

[8] The United States Court of Appeals for the Federal Circuit did not address the profit cap
requirement in *Thai I-Mei Frozen Foods Co. v. United States* because the plaintiff failed to
exhaust its administrative remedies on that issue.  616 F.3d 1300, 1302 n.1 (Fed. Cir. 2010).

F. Supp. 2d at 1088.  Thus, the Department's profit cap was the weighted average of the profit

realized by respondents during the eighth administrative review on home-market sales in the

ordinary course of trade.  The reasoning by which the court is rejecting the profit cap in Second

Remand Redetermination also applies to the profit cap Commerce incorporated into the Final

Results.  As demonstrated by the record evidence that four of the six respondents failed to realize

an overall profit, below-cost sales were a significant feature of the home-market conditions

affecting the marketing of pasta in Italy.  As a result, substantial evidence does not support a

determination that the profit cap incorporated into the Final Results reflected the "amount

normally realized by exporters or producers . . . in connection with the sale, for consumption in

the foreign country, of merchandise that is in the same general category of products as the

subject merchandise . . . ." 19 U.S.C. § 1677b(e)(2)(B)(iii).  As the court has emphasized, a

profit cap determination must be supported by substantial evidence present on the administrative

record considered as a whole.  And as the court discussed previously, a determination is not

supported by substantial evidence if it disregards record data that is probative of the general

conditions in the home market affecting the profitability of domestic pasta producers who

operate in that market.  The profit cap determined for the Final Results, therefore, would not

satisfy the remand order the court now issues in this case.

   In sum, the court will not grant defendant's motion for relief from the court's prior orders

in this case.  However, based on the general principle of deference on which the Court of

Appeals based its decision in *Thai I-Mei*, the court considers that Commerce, on remand, may be

able to explain adequately why a CV profit amount that is redetermined by a method excluding

non-ordinary-course sales satisfies the "reasonable method" requirement of clause (iii).  As

required by the statute, the result of any such redetermination still must be tested according to the profit cap requirement.

### III. CONCLUSION

The court concludes that the Second Remand Redetermination does not subject the determination of a CV profit amount to a lawful profit cap and therefore cannot be affirmed. The court also denies relief on defendant's motion requesting that the court affirm the Final Results. The court will order Commerce to reconsider the constructed value profit as determined in the Second Remand Redetermination and to redetermine constructed value profit in a way that imposes a lawful profit cap. In preparing a remand redetermination, the Department may redetermine constructed value ISE.

### ORDER

Upon review of the Results of Redetermination pursuant to Court Remand, as filed on July 19, 2010 ("Second Remand Redetermination"), the parties' comments, and all other papers and proceedings herein, and upon due deliberation, it is hereby

**ORDERED** that the Second Remand Redetermination be, and hereby is, set aside as contrary to law; it is further

**ORDERED** that Commerce will submit to the court a third remand redetermination that complies with 19 U.S.C. § 1677b(e)(2)(B)(iii) and related statutory provisions in all respects, that specifically incorporates a lawfully-determined profit cap, and that is in accordance with all directives and conclusions set forth in this Opinion and Order; it is further

**ORDERED** that Commerce shall submit its third remand redetermination within ninety (90) days of the date of this Opinion and Order; it is further

**ORDERED** that plaintiff may submit to the court comments on the third remand redetermination within thirty (30) days of the date on which the third remand redetermination is filed with the court; it is further

**ORDERED** that defendant and defendant-intevenor may submit comments on the third remand redetermination, and on plaintiff's comments thereon, within twenty (20) days of the date on which plaintiff files its comments with the court; and it is further

**ORDERED** that Defendant's Consolidated Motion for Relief from this Court's Remand Orders & Reply to Plaintiff's Comments upon the Second Remand Redetermination be, and hereby is, DENIED to the extent it seeks affirmance of the *Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007).


                                                                    /s/ Timothy C. Stanceu
                                                                  Timothy C. Stanceu
                                                                  Judge

Dated: September 7, 2011
            New York, New York