Slip. Op. 14-26

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **ATAR S.R.L.**, | |
|             Plaintiff, | |
|             v. | |
| **UNITED STATES**, | Before: Timothy C. Stanceu, Judge |
|             Defendant, | Court No. 07-00086 |
|             and | |
| **AMERICAN ITALIAN PASTA COMPANY, DAKOTA GROWERS PASTA COMPANY, and NEW WORLD PASTA COMPANY**, | |
|             Defendant-intervenors. | |

## OPINION

[Affirming the final results of an administrative review of an antidumping duty order on certain pasta from Italy, in compliance with a remand issued by the United States Court of Appeals for the Federal Circuit]

Dated: March 3, 2014

*David J. Craven*, Riggle & Craven, of Chicago, IL, for plaintiff Atar S.r.l.

*Jane C. Dempsey*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for defendant. With her on the brief were *Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *Deborah King*, Attorney-International, Office of Chief Counsel for Import Administration, U.S. Department of Commerce, of Washington, DC.

*Paul C. Rosenthal* and *David C. Smith*, Kelley Drye & Warren LLP, of Washington, DC, for defendant-intervenors American Italian Pasta Company, Dakota Growers Pasta Company, and New World Pasta Company.

Stanceu, Judge: Before the court is the mandate issued by the United States Court of Appeals for the Federal Circuit ("Court of Appeals") in *Atar S.r.l. v. United States*, 730 F.3d 1320 (Fed. Cir. 2013) ("*Atar*"). CAFC Mandate in Appeal # 13-1001 (Nov. 4, 2013). *Atar* reversed the judgment entered by the court in this case, *Atar S.r.l. v. United States*, 36 CIT __, 853 F. Supp. 2d 1344 (2012), *rev'd*, 730 F.3d 1320 (Fed. Cir. 2013) ("*Atar IV*"), and "remand[ed] for further action consistent with this opinion," *Atar*, 730 F.3d at 1329-30. The court issues this opinion to explain how it will comply with that mandate and will enter a judgment accordingly.

## I. BACKGROUND

The detailed background of this litigation is described in the court's prior opinions and is summarized briefly herein. *See Atar, S.r.l. v. United States*, 33 CIT 658, 637 F. Supp. 2d 1068 (2009) ("*Atar I*"); *Atar, S.r.l. v. United States*, 34 CIT __, 703 F. Supp. 2d 1359 (2010) ("*Atar II*"); *Atar, S.r.l. v. United States*, 35 CIT __, 791 F. Supp. 2d 1368 (2011) ("*Atar III*"); *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1344.

In this litigation, plaintiff Atar S.r.l. ("Atar"), an Italian pasta producer, contested the final determination ("Final Results") that the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") issued to conclude the ninth administrative review of an antidumping duty order on certain pasta from Italy (the "subject merchandise"). *See* Compl. (Apr. 5, 2007), ECF No. 8; *Notice of Final Results of the Ninth Admin. Review of the Antidumping Duty Order on Certain Pasta from Italy*, 72 Fed. Reg. 7,011 (Feb. 14, 2007) ("*Final Results*"). The ninth review covered the period of July 1, 2004 through June 30, 2005. *Final Results*, 72 Fed. Reg. at 7,012.

In the *Final Results*, Commerce assigned Atar a weighted-average antidumping duty margin of 18.18%. *Final Results*, 72 Fed. Reg. at 7,011. In reaching this determination, Commerce calculated the normal value of Atar's subject merchandise according to the constructed value ("CV") method. *Atar I*, 33 CIT at 661, 637 F. Supp. 2d at 1072-73. Commerce used the CV method because it determined that Atar lacked sufficient sales of the foreign like product in its home market during the POR to constitute a viable comparison market and that Atar's selling activity in Angola was insufficient to support use of Angola as a viable comparison market. *Id.* *See also* 19 U.S.C. § 1677b(a)(4).

In *Atar I*, the court affirmed various determinations that Commerce made in the Final Results.[1] *Id.*, 33 CIT at 662-72, 637 F. Supp. 2d at 1074-81. The court also remanded the Final Results, directing Commerce to reconsider its method of determining CV indirect selling expense (ISE) and profit, according to which Commerce had used the weighted-average ISE and a weighted-average profit rate, both derived from the home market sales data of six respondent companies in the previous (eighth) administrative review. *Id.*, 33 CIT at 672, 637 F. Supp. 2d at 1082. Specifically, *Atar I* concluded that Commerce arbitrarily had excluded from those data all sales that were made below-cost and therefore were outside of the ordinary course of trade. *Id.*, 33 CIT at 681, 637 F. Supp. 2d at 1088. The court noted that Commerce based its decision

---

[1] In *Atar I*, the court affirmed the Department's decision to use constructed value ("CV") rather than determine normal value based on Atar's selling activity in Angola. *Atar, S.r.l. v. United States*, 33 CIT 658, 662-72, 637 F. Supp. 2d 1068, 1074-81 (2009) ("*Atar I*"). The court also affirmed the Department's decision not to use Atar's profit and indirect selling expense data from Atar's selling activity in Angola in determining CV. *Id.*, 33 CIT at 673-75, 637 F. Supp. 2d at 1083-84. Further, the court rejected Atar's claim that Commerce should have used the data of the only other respondent in the ninth review, Corticella, in determining constructed value ISE and profit. *Id.*, 33 CIT at 675-76, 637 F. Supp. 2d at 1084-85. Additionally, the court affirmed the Department's decision to include the value of certain services rendered to Atar by Atar's principal, a shareholder who decided to forego salary, when determining Atar's ISE for the CV determination. *Id.*, 33 CIT at 683-85, 637 F. Supp. 2d at 1090-92.

to exclude below-cost sales only on a general "preference" without grounding the decision in findings of fact pertinent to Atar's sales experience and without demonstrating the reasonableness of this approach. *Id.*, 33 CIT at 681, 637 F. Supp. 2d at 1088. The court directed Commerce to "reconsider, and redetermine as necessary" the constructed ISE and profit calculations and to "reconsider its decision to exclude from those calculations the data derived from home market sales of the respondents in the eighth administrative review that occurred outside the ordinary course of trade." *Id.*, 33 CIT at 686, 637 F. Supp. 2d at 1092.

Responding to the court's remand order in *Atar I*, Commerce redetermined Atar's constructed value ISE and profit by a different method, this time using a weighted average derived from data of only two of the six respondents in the previous (eighth) review. *Atar II*, 34 CIT at __, 703 F. Supp. 2d at 1362-63. Commerce chose the two respondents that had realized an overall profit in the eighth review but did not exclude the below-cost sales of the two chosen respondents. *Id.* Commerce recalculated constructed value ISE and profit and reduced Atar's margin to 14.45%. *Id.* On review of the first remand redetermination in *Atar II*, the court concluded that the Department's revised method, as applied to the calculation of CV profit, did not comply with the statutory "profit cap" requirement set forth in 19 U.S.C. § 1677b(e)(2)(B)(iii) because Commerce "neither identified a profit cap nor made a finding that available data did not allow it to do so." *Id.*, 34 CIT at __, 703 F. Supp. 2d at 1364. The court directed that Commerce, on remand, should redetermine Atar's CV profit "in a way that satisfies both the profit cap and reasonable method requirements" of the statute. *Id.*, 34 CIT at __, 703 F. Supp. 2d at 1370. The court provided Commerce with the option of redetermining constructed value ISE and reserved any ruling on the constructed value ISE that Commerce applied to Atar in the first remand redetermination. *Id.*, 34 CIT at __, 703 F. Supp. 2d at 1370.

On remand from the decision in *Atar II*, Commerce did not change the determination it reached in response to *Atar I* but explained its position that the CV profit calculation reached in its previous remand, which was based on the weighted-average profit rate of the two eighth review respondents that earned a profit in the eighth review, established a reasonable profit cap. *Atar III*, 35 CIT at __, 791 F. Supp. 2d at 1371. In *Atar III*, the court concluded that the Department's profit cap, in reflecting the home market sales of only two of the eighth-review respondents, did not satisfy the requirement that a profit cap be based on "the amount normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise . . . .'" *Id.*, 35 CIT at __, 791 F. Supp. 2d at 1374, 1376 (citing 19 U.S.C. § 1677b(e)(2)(B)(iii)). *Atar III* directed Commerce to redetermine, on remand, the profit cap according to a lawful method. *Id.*, 35 CIT at __, 791 F. Supp. 2d at 1380-81. In response to the intervening decision of the Court of Appeals in *Thai I-Mei v. United States*, 616 F.3d 1300 (Fed. Cir. 2010), the court left open the prospect that Commerce might reasonably redetermine CV profit by a method excluding non-ordinary-course sales, provided that Commerce ensured that the result of any such redetermination is "tested according to the profit cap requirement." *Id.*, 35 CIT at __, 791 F. Supp. 2d at 1380.

In response to *Atar III*, Commerce issued a third remand redetermination in which it calculated Atar's CV profit by the same method by which it had done so in the Final Results, *i.e.*, it based the profit rate on a weighted-average of the data from the sales of subject merchandise made in the home market and in the ordinary course of trade by the six respondents in the eighth review. *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1347-48. Commerce calculated Atar's profit cap using a weighted-average of the data from the reported home market sales of the six

respondents in the eighth review, including below-cost sales, and, because the profit cap as so calculated was lower than the CV profit determination, used the profit cap as Atar's CV profit. *Id.*, 36 CIT at __, 853 F. Supp. 2d at 1348-49. Commerce determined Atar's constructed value ISE according to a weighted-average of the ISE rates calculated for each of the six respondents in the eighth review. *Id.*, 36 CIT at __, 853 F. Supp. 2d at 1350. Commerce then determined a revised margin of 11.76% for Atar. *Id.*, 36 CIT at __, 853 F. Supp. 2d at 1346. Over certain objections raised by Atar, the court sustained the Department's third remand redetermination in *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1352, and issued a judgment to that effect.

## II. DISCUSSION

The court must determine what "further action consistent with" the opinion of the Court of Appeals in *Atar* is required to implement the mandate. *Atar*, 730 F.3d at 1330. The court addresses this question below.

As the Court of Appeals stated in *Atar*, "[t]he only question presented in this appeal is whether the trade court erred in rejecting Commerce's exclusion of below-cost sales from its profit cap calculations relating to Atar's subject merchandise." *Atar*, 730 F.3d at 1326. As did the Court of International Trade, the Court of Appeals concluded that the statute in question, 19 U.S.C. § 1677b(e)(2)(B)(iii), did "'not speak directly to the question of how Commerce is to determine' the amount normally realized, nor does it 'direct that data on unprofitable sales be included or excluded.'"[2] *Id.* at 1326 (citing *Atar III*, 35 CIT at __, 791 F. Supp. 2d at 1376).

---

[2] Under 19 U.S.C. § 1677b(e)(2)(B)(iii), Commerce may determine constructed value profit "by any other reasonable method, except that the amount allowed for profit may not exceed the amount normally realized by exporters or producers . . . in connection with the sale, for consumption in the foreign country, of merchandise that is in the same general category of products as the subject merchandise."

Proceeding on the basis of this ambiguity, the appellate court applied an analysis based in *Chevron, U.S., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984) to conclude that the trade court had erred in failing to defer to the Department's construction of the statute, which the Court of Appeals viewed as reasonable. *Id.* at 1326. Specifically, the Court of Appeals held that "Commerce acted reasonably in excluding below-cost sales data from the prior administrative review when calculating the constructed value profit cap applicable to Atar's subject merchandise under 19 U.S.C. § 1677b(e)(2)(B)(iii)." *Id.* at 1329-30.

As discussed previously in this opinion, Commerce, when making its constructed value profit calculation in its third remand redetermination, reverted to the method it had used in the Final Results. *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1347-48. That method was sustained by the trade court in *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1349, and was not at issue before the Court of Appeals. In the Final Results, Commerce did not determine a profit cap separately from its original determination of CV profit and excluded below-cost sales in calculating both profit and the profit cap, determining a margin of 18.18%. *See Atar I*, 33 CIT at 661, 681, 637 F. Supp. 2d at 1072, 1088-89. The Court of Appeals affirmed this method of determining the profit cap in its *Atar* decision. *Atar*, 730 F.3d at 1327-28, 1329.

In the Final Results, Commerce determined Atar's constructed value ISE by using the weighted-average indirect selling expenses derived from the home market data of the six respondent companies in the eighth review. *Atar I*, 33 CIT at 672, 637 F. Supp. 2d at 1082. Commerce returned to this method of determining constructed value ISE in its third remand redetermination. *Atar IV*, 36 CIT at __, 853 F. Supp. 2d at 1350-51. The court affirmed this method in *Atar IV, id.*, and the method was not at issue on appeal in *Atar*. All of Atar's other claims brought to contest the Final Results were adjudicated by *Atar I*, which affirmed the Final

Results in part and rejected each of these other claims.  No questions relating to these claims were at issue before the Court of Appeals in *Atar*.  And although plaintiff raised various other objections in response to the Department's remand redeterminations, those objections were addressed, and rejected, in the court's previous opinions.

Based on the above, the court concludes that a further remand to Commerce is unnecessary and that the mandate issued in *Atar* is appropriately effectuated by means of a judgment affirming the Final Results, which the court will enter.

                                                                                  /s/ Timothy C. Stanceu
                                                                                  Timothy C. Stanceu
                                                                                  Judge

Dated: March 3, 2014
       New York, New York